WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Catherine Bowman,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Country Preferred Ins. Co.,<br><br>　　　　　　Defendant. | No. CV-12-02720-PHX-SMM<br><br><br><br>**ORDER** |

Pending before the Court is Defendant Country Preferred Insurance Company's ("Country") motion for summary judgment. (Doc. 62.) The motion is fully briefed. (Docs. 80; 82.) Having reviewed the parties' briefing, the Court will deny Country's motion.

**I. Factual and Procedural Background**

This[1] first-party underinsured motorist ("UIM") bad faith action arises out of a car accident that occurred in 2009. Plaintiff Catherine Bowman's ("Bowman") vehicle was hit by a vehicle driven by Johnny Goodwyn ("Goodwyn") after Goodwyn ran a red light. (Doc. 1 at 7.) Both Bowman and Goodwyn were insured by Country. (Doc. 1 at 6, 11.) Goodwyn had a liability policy with $100,000 limits; Bowman had UIM coverage with $250,000 limits. (Id.)

---

[1] The following facts are undisputed, unless indicated otherwise.

The day after the accident, June 26, 2009, Bowman contacted Country and informed Diane Carrigan, a Country claims representative, that she suffered from stiffness in her body and planned to visit a physical therapist. (Doc. 81-6 at 6, 26.) Later that day, Carrigan noted that "Catherine was injured in this accident and will be making a bodily injury claim." (Doc. 81-1 at 31.)

A few days later, Barry Janckes, the Country claims representative for Goodwyn, informed Bowman that Country had accepted liability for the crash. (Docs. 1 at 12; 81-1 at 2.)  Near the end of July 2009, Country paid for the damage to Bowman's vehicle. (Doc. 63 at 9.)

Over the next two years, Bowman's claim remained dormant, with only periodic calls or letters between Country and Bowman. (Docs. 63-1 at 31; 81-1 at 54.) Then, on June 7, 2011,—19 days before the statute of limitation expired—Bowman hand delivered a "demand package" to Country alleging that she suffered from thoracic outlet syndrome ("TOS"), cracked teeth, and a number of other injuries as a result of the accident. (Doc. 81-2 at 7-42.) The claim also included medical opinions confirming the existence of Bowman's alleged injuries and causation testimony from two vascular surgeons (Doc. 81-5 at 49, 50), a report from Susan Sorosky, P's treating M.D., (Doc. 81-4 at 2-8), a report from certified neuromuscular massage therapist ("NMT")(Doc. 81-4 at 10-11), and the findings from Dr. Hurt, Bowman's dentist (Doc. 81-3 at 65-66). (See Doc. 81-2 at 17.), Soon after, Bowman filed a third-party action against Goodwyn in Superior Court. (Doc. 63 at 15.)

On August 9, 2011, Bowman allegedly called Country to inquire about the status of the first party UIM claim, and was asked for further medical authorization so that Country "[could] begin the evaluation of the underinsured motorist claim." (Doc. 81-1 at 35.) The next day, Bowman sent additional information and authorization to Country. (Doc. 63 at 19.) Three weeks later, Carrigan informed Bowman that the records review was complete, and that the claim would be sent to a review team. (Doc. 81-1 at 36.) Carrigan also indicated that Country would "likely" request an independent medical

exam ("IME") shortly following the records review. (Id.)

On September 6, 2011, Carrigan extended a $10,000 offer to Bowman in an effort to settle the UIM claim. (Doc. 81-1 at 28.) The claim notes do not indicate Carrigan's reasoning for the offer amount. (Doc. 81-1 at 26-29.) Bowman rejected the offer. (Id.) The next day, Carrigan sent a letter to Dr. Sorosky inquiring about Bowman's alleged TOS. (Doc. 81-4 at 2.) Dr. Sorosky responded that it was her opinion that Bowman's TOS was related to injuries sustained in the June 2009 car accident. (Doc. 81-4 at 4.)

On September 22, 2011, Carrigan informed Bowman that Country would include her dental costs in the claim, confirmed receipt of the additional reports from Dr. Sorosky and the NMT, and indicated that Country would have an independent medical records review performed to evaluate the records. (Doc. 81-1 at 39.) Carrigan retired the following day and the UIM claim was transferred to Country claims representative Leslie Sinatra. (Id.)

On September 27, 2011, Sinatra informed Bowman that Carrigan had not forwarded the materials for an independent medical records review, and that the review would require more time. (Doc. 81-1 at 40.)

On October 4, 2011, Bowman notified Country that she would demand arbitration if the UIM claim were not resolved by October 18, 2011. (Doc. 81-2 at 44-45.) After learning of the impending arbitration, Jim Shaffer, Country Claims attorney responsible for the Goodwyn action pending in Superior Court, instructed Sinatra to forward the UIM claim to him. (Docs. 81-1 at 48; 81-1 at 54.) After turning the claim over to Shaffer, Sinatra informed Bowman that Country "did not have enough prior records to appropriately evaluate the causation issues…" and that the claim would proceed to arbitration. (Doc. 81-1 at 44.) Bowman asked Sinatra to identify which medical documents were missing, but Sinatra responded that the claim now fell under the purview of Country's litigation team. (Doc. 81-1 at 43.)

After receiving the file, Shaffer contacted Steve Venezia, outside counsel contracted to represent the Goodwyns in the Superior Court case, to talk about an

1  "interesting development" in the claim. (Doc. 63-3 at 6.) Shaffer asked Venezia if he
2  would handle both claims, reasoning that Country could "simply resolve both claims in
3  arbitration with the [bodily injury] limits ahead of the UIM limits." (Id.) Shaffer
4  explained further that "[i]f the award is over the [bodily injury] limit, then we simply pay
5  the remaining amount under UIM, without the concern for an excess verdict." (Doc. 63-3
6  at 6.) Venezia responded that he did not see a conflict. (Doc. 81-1 at 49.)

7  Venezia thereafter assumed responsibility as counsel for both the UIM and third
8  party claim. (Id.) As defense counsel for both claims, Venezia denied coverage on the
9  third-party claim on November 4, 2011, based on a sudden incapacitation defense. (Doc.
10 81-4 at 63, ¶ 23.)

11 On December 7, 2011, Bowman complained to Shafer about the joining of her
12 claims. (Doc. 81-2 at 56-59.) A few days later, Douglas Hundman, Country Claims
13 Supervising Attorney, informed Bowman that Pete Bangay (claims representative) and
14 Paul McGoldrick (attorney) would continue with the UIM claim, and Kristi Lewis
15 (claims representative) and Tom Burke (replaced by David Matheson) (attorney) would
16 be handling the Goodwyn case. (Doc. 81-1 at 54). Hundman also acknowledged that
17 Country did not notify Bowman that liability had been in dispute and that Country had
18 become aware of the potential for a liability defense from a letter Country had received
19 from Bowman in May, 2011. (Id.)

20 On January 20, 2012, McGoldrick met with Bangay and decided to forgo the
21 sudden incapacity defense raised by Venezia and re-admit liability. (Doc. 81-3 at 9.)
22 Notes from that meeting provide: "Maybe in [bad faith] claim down the road to minimize
23 exposure. Admit Liab." (Doc. 81-3 at 8.)

24 Later that day, McGoldrick notified Bowman that Country would not contest
25 liability on the UIM claim and the arbitration would proceed on causation and damages
26 only. (Doc. 81-3 at 7.)

27 On January 23, 2012, Matheson offered the $100,000 policy limits in the
28 Goodwyn case. (Docs. 81-3 at 9; 81-4 at 65, ¶¶ 33-34.) Bowman accepted the settlement,

- 4 -

but retained her right to pursue payment and a bad faith action for the UIM claim. (Doc. 63-4 at 4.)

By March 2012, McGoldrick had arranged to submit Bowman to an IME performed by Dr. Brown. (Doc. 81-3 at 32-34.) On March 23, McGoldrick sent Dr. Brown Bowman's medical records, noting that "the primary issue in the case is the causal relation of the [TOS] to the accident, the treatment for this condition…, and whether this condition impacts the ability of Ms. Bowman to work." (Id. at 33.) Dr. Brown performed the IME on March 27. (Doc. 63-5 at 14.) In his report, he indicated that he found "no evidence this patient developed thoracic outlet syndrome as a result of the … accident" primarily because the "onset of symptoms [was] not consistent with the diagnosis of TOS…." (Id.) McGoldrick forwarded Dr. Brown's IME report, without reference to the contradictory positions of Bowman's medical experts, noting that the report was "favorable." (Doc. 81-3 at 35.)

On May 16, 2012, Dr. Enrico DiVito signed a letter drafted by McGoldrick opining that he could not conclude to a reasonable degree of medical probability that the 2009 accident caused Bowman's tooth damage because Dr. Hunt had not referenced the accident in his report. (Doc. 81-3 at 40-41.) Dr. DiVito did not address explanations for the omission or subsequent treatment done by Dr. Hurt that link Bowman's dental issues with the accident. (Doc. 81-3 at 65-74).

On June 11, 2012, McGoldrick performed the only known financial evaluation of Bowman's UIM claim, estimating the claim value to be from $110,000 to $150,000. (Doc. 81-3 at 51.) In his briefing to the arbiters, McGoldrick allegedly referenced the available policy limits. (Doc. 81-5 at 93 § 89.) Four days later, the parties arbitrated the UIM claim and Bowman was awarded the $250,000 policy limits. (Doc. 81-5 at 46.)

On December 26, 2012, Bowman filed this action for bad faith against Country. (Doc. 1.)

**II. Standard of Review**

    **a. Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

### b. Bad Faith

Under Arizona law[2], an insurer implicitly owes a covenant of good faith and fair dealing to its insureds. Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). "[A]n insurance company's duty of good faith means that "an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interest." Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 507, 838 P.2d 1265, 1268 (1992) (citing Tank v. State Farm Fire & Casualty Co., 715 P.2d 1133, 1136 (Wash. 1986)(emphasis in original).

An insured breaches its duties—i.e. acts in bad faith--when it "unreasonably investigates, evaluates, or processes a claim (an 'objective' test), and either knows it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it (a 'subjective' test)." Nardelli v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 597–98, 277 P.3d 789, 794–95 (App. 2012) (citing Zilisch, 196 Ariz. at 238, 995 P.2d at 280). Common examples of bad faith are "deceit, nondisclosure, reneging on promises, violation of industry custom, and deliberate attempts to obfuscate." Rawlings, 151 Ariz. at 161, 726 P.2d at 577. Further, "groundless" or inadequately investigated reasons for a position and delayed evaluations despite having all relevant medical records are also generally considered signs of bad faith. Lange v. Penn Mut. Life Ins. Co., 843 F.2d 1175, 1182 (9th Cir. 1988); see Zilisch, 196 Ariz. at 280–81, 995 P.2d at 238–39; see also Nardelli, 230 Ariz. at 599, 277 P.3d at 796 (an insurer may not ignore conflicting evidence but must continually give equal consideration to the available evidence shedding light on the claim.).

An insured may avoid a claim of bad faith by arguing that its decision to decline or withhold coverage was justified because the claim was "fairly debatable." Generally, "[w]hile an insurer may challenge claims which are fairly debatable…its belief in fair

---

[2] A federal court sitting in diversity applies state substantive law. See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005). Arizona law therefore applies to Plaintiff's state-law claim.

- 7 -

debatability is a question of fact to be determined by the jury." Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (further citation and quotation omitted). However, if the insured offers no significantly probative evidence that calls into question the insurer's belief regarding fair debatability, the court may rule on the issue as matter of law. See Knoell v. Metropolitan Life Ins. Co., 163 F.Supp.2d 1072, 1076 (D.Ariz. 2001); see also Aetna Cas. & Sur. Co. v. Superior Court In & For Cnty. Of Maricopa, 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (App.1989) (stating that "there are times when the issue of bad faith is not a question appropriate for determination by the jury.").

## III. Discussion

### a. Bad Faith

As a threshold matter, the Court must address Country's opening argument. Country argues that Bowman "does not have a direct cause of action to bring a third-party [bad faith] claim…." (Doc. 62 at 7.) Finding that Bowman has neither pled nor argued a third-party bad faith claim (Doc. 1), the Court disregards Country's irrelevant arguments.

Country argues that it should be granted summary judgment on Bowman's first-party bad faith claim because Country conducted a timely, reasonable investigation. (Doc. 62 at 10-14.) Specifically, Country argues that the scope of the initial investigation was proper in light of neither party to the 2009 accident reporting injuries (Id. at 12.); Country Claims Representative Diane Carrigan began investigating Bowman's claim immediately after Bowman delivered her "demand package" (Id.); Country subjected Bowman to an IME (Id. at 13); disclosure of the policy limits to the arbiter was not against industry custom (Id. at 11); Country was "entitled" to deny liability in the Goodwyn case (Id. at 13); and no evidence supports Bowman's allegation that combining the first and third party claims was done in bad faith (Id. at 10)[3]. Bowman argues that the

---

[3] This last argument actually appears under Country's third-party claim arguments

1  facts put forward by Country do not tell the full story and that a jury could find that
2  Country engaged in bad faith by improperly denying coverage, disregarding relevant
3  evidence, and failing to give equal consideration to the claim after Bowman requested
4  arbitration. (Id. at 14-18.) The Court agrees with Bowman.

5      Preliminarily, the Court finds that two factual assertions in Country's arguments
6  are unsupported by the record. First, Bowman reported that she was injured and planned
7  to pursue a bodily injury claim soon after the 2009 accident. (Docs. 81-6 at 6, 26; 81-1 at
8  31.) Second, Diane Carrigan did not begin investigating Bowman's UIM claim until two
9  months after Bowman had submitted the "demand package." (Doc. 81-1 at 35.) Further,
10 the Court finds that the propriety of Country's 2009 investigation is immaterial to the
11 issues surrounding Bowman's UIM claim filed in 2011. (See Doc. 81-2 at 7-42.)

12     Turning its analysis to issues and facts in dispute, the Court is mindful of the
13 circumstances that, in effect, allowed Country to assume an adversarial stance. A UIM
14 bad faith claim raises unique issues regarding the relationship between the insured and
15 the insurer. The Voland Court explained,

> "Uninsured motorist coverage...is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be "legally entitled" to collect-that is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled. The question arises: when is a carrier of uninsured motorist coverage under a duty to pay its insured's damages? There is no universally definitive answer to this question or to the question when an action alleging bad faith may be maintained for the improper handling of an uninsured or underinsured motorist claim; the answer is, of course, dependent upon the facts of each case. Clearly, there is a covenant of good faith and fair dealing between the insurer and the insured, as with direct insurance, but the insurer and the insured occupy adverse positions until the uninsured motorist's liability is fixed...."

Voland v. Farmers Ins. Co. of Arizona, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.

---

and not under the UIM bad faith section. (Doc. 62 at 10.) Country appears to extend the argument to the UIM claim in its Reply. (Doc. 82 at 4-5.) The Court may, in the interests of judicial economy and a fair hearing on the merits, refuse to consider new arguments raised for the first time in a reply brief. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). However, given the UIM claim's inherent interdependence on the Goodwyn case, see Voland, 189 Ariz. at 451, 943 P.2d at 811, the Court will consider Country's argument.

1997)(citing LeFevre v. Westberry, 590 So.2d 154, 159 (Ala. 1991)). Further, Bowman exercised her right to request arbitration, thus reinforcing the adversarial nature of her claim. Also, Country was required to give an "undeviating and single allegiance" to Goodwyn and Bowman because both were Country insurers. See Parsons v. Cont'l Nat. Am. Grp., 113 Ariz. 223, 227, 550 P.2d 94, 98 (1976) (citing Newcomb v. Meiss, 263 Minn. 315, 116 N.W.2d 593 (1962)). However, none of these circumstances obviated Country's duty to "giv[e] equal consideration *in all matters*" to Bowman's interests. Deese, 172 Ariz. at 507, 838 P.2d at 1268. Indeed, it is beyond question that, along with receiving financial security from purchasing insurance, "the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith." Id. at 508, 838 P.2d at 1269. In other words, the insurer may do what is necessary to investigate and evaluate and even arbitrate an insured's claim; but the inherent adversarial nature of such actions does not allow an insured to engage in bad faith. Id.; see also Zilisch, 196 Ariz. at 238, 995 P.2d at 280. ("[An insurer] should do nothing that jeopardizes the insured's security under the policy.") Therefore, keeping in mind Country's justified adversarial position, the Court focuses its analysis on the two-prong analysis of insurance bad faith: an insurer's objective reasonableness and subjective intent. See Nardelli, 230 Ariz. at 597–98, 277 P.3d at 794–95.

**1. Objective Test**

The Court looks to Zilisch for initial guidance regarding Country's objective reasonableness. In Zilicsh, the court found that an insurer's 10-month delay in formally evaluating a claim despite having all available medical records and failure to submit the insured to an IME until after already offering settlement were objective indicators of bad faith. Zilisch, 196 Ariz. at 238. Here, Country waited 12 months to formally evaluate the UIM claim despite Bowman's cooperation and Country extended a settlement offer before submitting Bowman to an IME. The Court therefore finds that sufficient facts exist for a jury to find that Country acted objectively unreasonable. The Court will continue its

analysis by discussing the facts pertaining to Country's UIM investigation and evaluation.

### A. Investigation

A genuine dispute of material fact exists regarding the objective reasonableness of Country's investigation. In a UIM claim, coverage depends on two factors: (1) fault of the under-insured motorist and (2) whether the claimant's damages exceed the under-insured's motorist's available coverage. Voland, 189 Ariz. at 451, 943 P.2d at 811. Further, in Arizona, "entitlement to UIM benefits is based on damages that exceed the applicable liability limits rather than being based on payment or exhaustion of those limits." Country Mut. Ins. Co. v. Fonk, 198 Ariz. 167, 170, 7 P.3d 973, 976 (App. 2000). To reiterate, "[t]he carrier has an obligation to immediately conduct an adequate investigation…" Zilisch, 196 Ariz. at 280, 995 P.2d at 238. Common examples of bad faith are "deceit, nondisclosure, reneging on promises,…and deliberate attempts to obfuscate." Rawlings, 151 Ariz. at 161, 726 P.2d at 577. Further, "groundless" or inadequately investigated reason for an insurer's position is an example of bad faith. Lange, 843 F.2d at 1182 (9th Cir. 1988); See Zilisch, 196 Ariz. at 280–81, 995 P.2d at 238–39.

Upon receiving Bowman's first-party claim, Country had a duty to immediately and adequately investigate both whether Goodwyn was at fault and whether Bowman's damages exceeded Goodwyn's $100,000 policy limit. Voland, 189 Ariz. at 451, 943 P.2d at 811; Fonk, 198 Ariz. at 170, 7 P.3d at 976; Zilisch, 196 Ariz. at 280, 995 P.2d at 238. However, the facts suggest that Country investigated Bowman's UIM claim two months after receiving it (Doc. 81-2 at 35, 44); denied liability—after more than two years of concession—without alerting Bowman that liability was in dispute (Doc. 81-1 at 54); and did not investigate the factual predicate (Goodwyn's sudden incapacitation) for denying liability (Doc. 81-3 at 8). Thus, a reasonable jury could find that Country unreasonably delayed its investigation, "reneged" its position of admitting coverage, and denied

coverage using inadequately investigated premises. Therefore, a material dispute of fact exists as to whether Country investigated Bowman's UIM claim in bad faith.

Moreover, Country's investigation may suggest that the insurer did not give equal consideration to Bowman's claim. "An insurance company's duty of good faith means that an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interest." Deese, 172 Ariz. at 507, 838 P.2d at 1268. For example, an insurer may not ignore conflicting evidence when investigating an insured's claim. Nardelli, 230 Ariz. at 599, 277 P.3d at 796. Country denied that Bowman suffered from TOS despite four medical providers opining that Bowman presented symptoms of the injury (compare Doc. 63-5 at 14 with Docs. 81-4 at 2-11; 81-5 at 49, 50.) and claimed that Bowman's dental records were inconclusive despite additional records that offer clarification (Doc. 81-3 at 40-41, 65-74). Accordingly, as a jury could find that Country put its interests ahead of Bowman's from these facts, the Court finds that a genuine dispute of material fact exist regarding whether Country acted objectively reasonable in its investigation of the UIM claim.

### B. Evaluation

A genuine dispute of material fact exists regarding the objective reasonableness of Country's evaluation. "The carrier has an obligation to…act reasonably in evaluating the claim…." Zilisch, 196 Ariz. at 280, 995 P.2d at 238. "[An insurer] cannot lowball claims or delay claims hoping that the insured will settle for less." (Id.) Indeed, "equal consideration" requires that an insurer evaluate a claim when sufficient information is available. Id; Lange, 843 F.2d at 1182. The facts show that Country offered Bowman $10,000 to settle the UIM claim (Doc. 81-1 at 28.); claimed that missing medical records prevented it from evaluating Bowman's UIM claim (Docs. 81-1 at 44; 81-3 at 32-34.); and failed to formally evaluate the claim until four days before arbitration (Doc. 80 at 15). Considering that the UIM claim was arbitrated for $250,000 and Bowman gave Country her complete cooperation to retrieve any missing documents, a jury could

conclude that Country evaluated the claim in bad faith. Therefore, the Court finds that summary judgment to Country on this issue of evaluation is improper.

### 2. Subjective Test

The Court finds that a genuine dispute of material fact exists concerning whether Country knew it acted in bad faith. Again, "[t]he appropriate inquiry [to bad faith] is whether there is sufficient evidence from which reasonable jurors could conclude that…the insurer acted unreasonably **and** either knew or was conscious of the fact that its conduct was unreasonable." Zilisch, 196 Ariz. at 280, 995 P.2d at 238 (emphasis added). Country combined the claims with the intent to avoid an excess verdict (Doc. 63-3 at 6.) and chose to pay Bowman's underlying policy limits in order to "minimize exposure" to a future bad faith claim. (Doc. 81-3 at 8.) A jury could find that these facts, viewed in context of Country's objectively unreasonable actions, suggest that Country knowingly placed its interests above Bowman's. See Deese, 172 Ariz. at 507, 838 P.2d at 1268 ("[A]n insurance company's duty of good faith means that an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interest."). Therefore, a genuine dispute of material facts exists regarding Country's knowledge of bad faith.

In sum, the Court finds that the record, when viewed in Bowman's favor, suggests that Country acted both objectively and subjectively unreasonable in handling the UIM claim. The Court is unconvinced by Country's recurrent argument that "*[i]n this case, the process worked."* (Doc. 82 at 11)(emphasis in Motion). Of course, a cursory telling of the facts may suggests that Country's process did work as Bowman received the policy limits on her UIM claim roughly one year after disclosing her injuries. However, as made clear by the Arizona Supreme Court, the ends of a claim's investigation and evaluation will not always justify the means. Zilisch, 196 Ariz. at 280, 995 P.2d at 238. As the offered evidence creates a genuine issue of material fact as to whether Country acted in bad faith, the Court will deny Country's motion for summary judgment.

### b. Evidentiary Disputes

Country argues that the opinion and testimony of Bowman's bad faith expert should be stricken because the expert's analysis was not based on the record. (Doc. 62 at 14.) The Court finds that the issue of striking expert witnesses is for another day. As a determination of this issue will not assist in the outcome of the dispositive issues presently submitted, the Court finds it prudent to provide the parties further opportunity to present more substantiated arguments concerning expert witnesses before trial.

Country also, for the first time its Reply, objects to Bowman's submittal of Wieneke's declaration, select arbitration exhibits, and Bowman's CV and personal declaration as evidence. (Doc. 82 at 8-10.) A court need not consider new arguments raised for the first time in a reply brief. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). The Court will therefore defer judgment on these evidentiary matters until trial.

### c. Damages

Country argues that Bowman has not offered sufficient evidence to support her claim that she suffered "impaired or limited credit" and was forced to make unnecessary interest payments on loans because of Country's alleged bad faith. (Doc. 62 at 15.) Bowman responds that she is entitled to have a jury determine what amount, if any, she is entitled to recover of the interest she paid. The Court agrees with Bowman. Sufficient facts have been put forward to suggest that Country acted in bad faith; therefore, the issue of damages will go to the jury. See Farr v. Transamerica Occidental Life Ins. Co. of California, 145 Ariz. 1, 6, 699 P.2d 376, 381 (Ct. App. 1984) (Plaintiff may recover all the losses caused by defendant's conduct, including damages for pain, humiliation and inconvenience, as well as for pecuniary losses.)

Country also contends that Bowman's emotional damages claim should be denied because Bowman failed to offer evidence of either negligent or intentional infliction of emotional distress. (Doc. 62 at 15-16.) Bowman argues that she is not required to prove the elements of negligent or intentional infliction of emotional distress. (Doc. 80 at 14.) The Court agrees with Bowman. Rawlings v. Apodaca, 151 Ariz. 149, 161, 726 P.2d 565,

- 14 -

577 (1986) ("When…tort damages are recoverable, plaintiff is not limited to the economic damages within the contemplation of the parties at the time the contract was made."); Farr, 145 Ariz. at 6, 699 P.2d at 381.

Country also contends that punitive damages are unjustified, arguing—without factual support or legal analysis—that Bowman fails to offer evidence to support a claim for punitive damages. (Doc. 62 at 17.) Bowman argues that punitive damages are proper because a jury could infer malice from Country's claims handling. (Doc. 80 at 18-19.)

In a bad faith tort case against an insurance company, punitive damages may only be awarded if the evidence reflects "something more" than the conduct necessary to establish the tort. Rawlings, 151 Ariz. at 160, 726 P.2d at 576. In Rawlings, the Arizona Supreme Court explained the parameters of punitive damages as follows:

> We restrict [the availability of punitive damages] to those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind. . . . [P]unitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur.

Id. at 162, 726 P.2d at 578 (internal citations omitted). Summary judgment on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence; summary judgment should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence. See Thompson v. Better-Bilt Aluminum Prod. Co., 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992). The court construes the evidence and all reasonable inferences drawn from the evidence in a light most favorable to the non-moving party. Id.

To establish a claim for punitive damages, the evidence must support a showing that Defendant either (1) intended to cause injury; (2) engaged in wrongful conduct motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others, even though defendant had neither desire nor motive to injure. See Bradshaw v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 411, 422, 758 P.2d 1313,

1324 (1988). To obtain summary judgment on the punitive damages issue in the instant case, Defendants must show there is a complete failure of proof, Celotex, 477 U.S. at 323, such that no reasonable jury could find the requisite evil mind required for punitive damages by clear and convincing evidence. See Thompson, 171 Ariz. at 558, 832 P.2d at 211.

In its threshold review of the evidence, the Court finds that the third avenue for punitive damages presents a close question. Country offered a settlement 25 times less than the eventual award before even submitting Bowman to an IME, reversed its position on liability multiple times without factual change, and arbitrated the UIM claim on the basis of a causation expert who concluded that, despite Bowman's indicative signs of TOS, no diagnosis could be made without further testing. These and other facts lead the Court to find that a reasonable jury could conclude by clear and convincing evidence that Country acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure Bowman's rights, even though Defendant had neither desire nor motive to injure. Id. Therefore, the Court will deny Country's arguments concerning punitive damages and permit Bowman's claim to continue.

**IV. Conclusion**

For the reasons set forth above, the Court finds that a material dispute exists regarding whether Country failed to give equal consideration to Bowman's UIM claim at all times. Accordingly,

**IT IS HEREBY ORDERED** denying Country's motion for summary judgment (Doc. 62.) This action is now ready for trial. The Pretrial order shall be provided in an accompanying order.

DATED this 31st day of March, 2015.

Honorable Stephen M. McNamee
Senior United States District Judge